UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL JENSEN,

        Petitioner,        Case No. 1:11-cv-224

v.        Honorable Janet T. Neff

MARY BERGHUIS,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner Daniel Jensen presently is incarcerated at the Gus Harrison Correctional Facility. Following a jury trial, Petitioner was convicted of third-degree criminal sexual conduct involving force, MICH. COMP. LAWS § 750.520d(1)(b). On October 26, 2007, the Montcalm County Circuit Court sentenced Petitioner to a prison term of 30 months to 15 years.

Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court, asserting a single claim, which is also the sole subject of his habeas petition:

> I. The trial court abused its discretion when he denied Defense Counsel's Motion for a Mistrial, and Motion for a New Trial. And Prosecutor's Misconduct when he deliberately Disclosed to the Jury Petitioner's Interview with a Polygraph Examination [sic].

(Am. Pet., ¶ 9(e), docket #3, Page ID#25.) In an unpublished opinion issued June 25, 2009, the Michigan Court of Appeals rejected the appellate claim and affirmed the conviction. (6/25/09 Mich. Ct. App. Op. (MCOA Op.), Attach. 1 to Pet., docket #1-1, Page ID##16-20.) The Michigan Supreme Court denied leave to appeal on December 21, 2009. (Mich. Sup. Ct. Ord, Attach. 1 to Pet., docket #1-1, Page ID#21.)

Petitioner filed the instant habeas action on or about March 1, 2011.[1]

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on March 1, 2011, and it was received by the Court on March 7, 2011. Thus, it must have been handed to prison officials for mailing at some time between March 1 and March 7. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date.

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

Petitioner makes no objection to the factual representations set forth in the court of appeals decision, which he has attached to his complaint. He instead argues that the court committed legal error in its analysis of those facts. As a consequence, the Court will accept the facts stated in the court of appeals decision as correct. *See* 28 U.S.C. § 2254(e)(1) (establishing a presumption of correctness for factual determination made by a state court, including a state appellate court, and requiring the petitioner to rebut the presumption by clear and convincing evidence); *Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Petitioner alleges that the trial court improperly denied his motion for mistrial and his motion for a new trial after the prosecutor elicited testimony that a witness was a polygraph examiner and attempted to elicit testimony about the extent of the witness' experience with polygraph examinations. Petitioner argues that the admission of any reference to a polygraph violated Michigan law prohibiting the admission of polygraph evidence, *see People v. Barbara*, 255

N.W.2d 171 (1977), and deprived Petitioner of a constitutionally fair trial. In addition, Petitioner appears to argue that the prosecutor committed misconduct violating the Due Process Clause, because his attempts to introduce evidence about a polygraph were intended to bolster the witness and mislead the jury.

To the extent that Petitioner argues that the trial court abused its discretion in denying a mistrial and denying a new trial, his claims rests on state law. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000). Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law

or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard. The admission of the reference to a polygraph violates no traditional and fundamental principle of justice. The Supreme Court has never held that the admission of evidence about a polygraph violates due process. Accordingly, the state-court's decision to admit information about the polygraph was neither contrary to nor a reasonable application of established Supreme Court precedent. *See Ege v. Yukins*, 485 F.3d 364, 383 (6th Cir. 2007) ("[W]hen a habeas claim is predicated on evidentiary issues, relief depends on the existence of precedent establishing the *particular type* of evidence at issue as violating the defendant's *due process* rights.") (emphasis in original) (citing *Maldonado v. Wilson*, 416 F.3d 470, 477-78 (6th Cir. 2005) (improper admission of voice stress test is not unreasonable under AEDPA standard where no Supreme Court precedent established admission of polygraph or similar evidence as a violation of due process)). As a consequence, the admission of the witness' limited testimony about being a polygraph examiner was not constitutionally impermissible.

Moreover, to the extent that Petitioner claims that the prosecutor committed constitutionally significant misconduct by deliberately soliciting the information about polygraphs in an attempt to bolster his witness, the Court also finds no basis for habeas relief. In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455

U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13 (1985); *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

As previously discussed, the admission of statements about the polygraph does not itself violate a clearly established Supreme Court precedent, as the Supreme Court has never held that evidence about a polygraph violates due process. Moreover, even assuming that the prosecutor's reference to the witness' experience as a polygraph examiner was a deliberate effort to improperly influence the jury or bolster the witness, the remaining factors strongly support the state court's decision to deny the claim. First, the reference was limited, resulting in evidence that the witness was a polygraph examiner. Second, defense counsel lodged an immediate objection that was heard outside the jury's presence. Third, the trial court directed the prosecutor to avoid any further reference to the word "polygraph" and gave an extensive curative instruction:

> Members of the jury, before we pick back up the direct examination, there was mention of a polygraph. I am instructing you at this point, that has no relevancy to this case and should not be considered by you. The only possible relevancy is that it goes to show as to why [Lieutenant] Edwards was meeting with [defendant] but there was no polygraph given, there was none refused. It just - - - it [is] a non-issue. And the reason why I even mention this . . . is because of the word polygraph, you [are] going to use that in some way against one party or another and I [am] specially telling you no. It [is] like one of those things we talked about in jury selection that you cannot use [] in deciding the case. This is a prime example. Its only possible relevancy is to show why [Lieutenant] Edwards was meeting with [defendant] but again there was no polygraph, there was none refused. It [is] just simply a non-issue and you should not hold that against either party and obviously you should not hold

> that against [defendant] in any way because there was [no polygraph examination administered] or because . . . you must think there must be something and we [are] not telling you about it, all those type of things. It is simply a non-issue. It [is] one of the reason[s] why in most cases, we do [not] even use the word polygraph just because we are always concerned that you [are] going to attach some kind of significance to that because of what you see in the newspaper, TV or whatever.
>
> The word came out so I am telling you it is a non-issue. I [am] even going a [step further] to tell you that there was not any polygraph here. There was none given, there was none refused, it only tells you why [] [Lieutenant] Edwards met with [defendant]. So it has maybe, maybe a little relevancy that way. We probably could have told you something else instead but just going around that because it did come out that [is] why the two were meeting. But other [than] that again, please, it has no relevancy, should not be considered and absolutely not held against [defendant] by any means. You [cannot] say because there was [no polygraph examination administered], he must have done something wrong or that there was one and we [are] just not being truthful with you, I [am] telling as the Judge there was not a polygraph and it was not because anybody refused one or because they could [not] work out he details, whatever, there simply was not a polygraph and it should not be held against either party. Very, very specifically not against [defendant]. I do [not] want that to be a factor in any way in your decision making process.

(MCOA Op. at 2-3, Page ID##17-18.) Based on the record before it, the state court determined that "the mention of the word 'polygraph' did not bolster or undermine the credibility of any witness." (MCOA Op. at 2.) The court also determined that, in light of the curative instruction, any possible harm was cured and Petitioner was not prejudiced. Those findings were entirely reasonable. Given the limited nature of the misconduct and the extensiveness of the curative instruction, the state-court's decision was neither contrary to nor an unreasonable application of established Supreme Court precedent.

## **Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: May 13, 2011                          /s/ Janet T. Neff
                                             Janet T. Neff
                                             United States District Judge